FILED
04 JAN -5 AM 9:36
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re SUREBEAM CORPORATION SECURITIES LITIGATION,

CASE NO. 03 CV 1721 JM (POR)

ORDER GRANTING IN PART DENYING IN PART FMC PENSION GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF; GRANTING FMC PENSION GROUP'S MOTION FOR APPROVAL OF LEAD COUNSEL; DENYING COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

This is a motion to appoint lead plaintiff and approve lead counsel in a securities class action. Six individuals or groups are moving for appointment as lead plaintiff: (1) FMC Ltd. Pension Plan & Trust, Jamerica Financial Inc., Joseph Brogan, and Spear Capital Management Inc. ("FMC Pension Group"), (2) Glen Leason, Mary Ann Richason, Paul Berger, Gregory Lavdanski, and Olive Branch-Leason ("Leason Group"), (3) Jonathan David Dobis, (4) Eva Searcy, Manuel Wilkey, Paul and Amella Strick, and Richard Shay ("Searcy Group"), (5) Albert Berni, and (6) Bernhard Bildstein.

## I. Background

Surebeam Corporation ("Surebeam") provides electronic food irradiation systems and services for the food industry. Allegedly, Surebeam developed trouble acquiring customers and began to misstate the company's financial status. Surebeam entered into a joint venture with a Brazilain corporation Tech Ion Industrial Brazil S.A. ("Tech Ion"). Surebeam allegedly failed to disclose problems that arose with the Tech Ion project, forgave much of Tech Ion's debt, and recognized

revenue from the Tech Ion deal despite the fact that the company could not repay the debt. Surebeam allegedly made false and misleading statements both in its Prospectus for the company's initial public offering ("IPO") as well as in several subsequent financial statements. These misrepresentations allegedly caused Surebeam's stock to trade at inflated levels.

Approximately eighteen complaints have been filed in this district against Surebeam, its officers and directors, its parent company Titan Corporation, and the underwriters on the IPO. While each complaint alleges its own specific time period, the class period is generally from March of 2001 to August of 2003. On October 6, 2003, this court entered an order consolidating the actions then pending as well as any subsequently filed related actions.

**II. Discussion**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") dictates the process for determining lead plaintiff in a securities class action brought under the Securities and Exchange Act of 1935 ("Exchange Act") as well as the Securities Act of 1933 ("Securities Act"). 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B); In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002).[1] The PSLRA requires prompt publication of notice advising class members of the existence of the class action and of their right to move within 60 days of the publication to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). In this case, on August 27, 2003, the plaintiff in Weiss v. Surebeam Corp. published a notice on the *Business Wire*[2] advising class members of the existence of the lawsuit and of the time limit for filing a motion to be appointed lead plaintiff. Twelve individuals or groups have moved within the sixty-day time period for appointment as lead plaintiff. Only six of those individuals or groups continue to seek appointment as lead plaintiff.[3]

---

[1]The Exchange Act and the Securities Act's provisions regarding appointment of lead plaintiff and approval of lead counsel are identical. Therefore, for convenience only citations to the Exchange Act, as amended by the PSLRA, are included from this point forward.

[2]There are no objections to the notice in this case. Furthermore, *Business Wire* has been found to be an adequate manner of providing notice in securities cases. See Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1067 (C.D. Cal. 1999).

[3]Steven Morrow, Anthony Segalle, Nancy and John Mensch, Michael Lampkin, Gene Kirby and Gary Blevins, Theodore Maka and Richard Torre, and James Curran have withdrawn their motions for appointment as lead plaintiff and for approval of lead counsel.

The standard for appointment of lead plaintiff is established in the PSLRA. That statute mandates that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," referred to as the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the most adequate plaintiff is "the person or group of persons" that meet

1. has either filed the complaint or made a motion in response to a notice;
2. has, in the determination of the court, the "largest financial interest" in the relief sought by the class; and
3. otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. § 78u-4(a)(3)(B)(iii)(I). The presumption established above may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either 1) "will not fairly and adequately protect the interests of the class," or 2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit in Cavanaugh held that the district court is required to strictly follow a three-step process in the determination of lead plaintiff. 306 F.3d at 729. First, the district court must determine if the procedural requirements are satisfied. Id. The second step requires the district court to compare the financial stakes of the parties and determine who has the highest financial interest. Id. at 729-30. Once the individual or group with the largest financial interest is identified, the court "must then focus its attention on *that* plaintiff" and determine whether they meet the requirements of Rule 23. Id. at 730 (emphasis in original). The court may not consider the merits of the other plaintiffs' claims. Id. at 732. If the individual or group with the largest stake in the controversy does not meet Rule 23's requirements the court must inquire into the adequacy of the individual or group with the second largest stake. Id. at 731. If the individual or group with the highest financial stake in the litigation does meet the requirements of Rule 23, they must be the presumptive lead plaintiff. Id. "[T]he *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." Id. at 732 (emphasis in original). Once the presumptive lead plaintiff is chosen, step three allows the other candidates to attempt to rebut the presumption by attacking that individual or group's qualifications under Rule 23. Id.

### A. The Candidates for Lead Plaintiff

Six individuals or groups have moved to be appointed lead plaintiff: (1) FMC Pension Group, (2) Leason Group, (3) Dobis, (4) Searcy Group, (5) Berni, and (6) Bildstein.

#### 1. Procedural Requirements

In order to be considered for lead plaintiff status, each proposed lead plaintiff must, within 60 days of published notice of the pendency of the action, move to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). Each prospective plaintiff must provide a sworn certification representing that he or she has read the complaint, did not purchase the security at the direction of counsel or in order to participate in any private action, and is willing to serve as a representative party. Id. § 78u-4(a)(3)(A)(i)-(iii). The sworn certification must set forth "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." Id. § 78u-4(a)(2)(A)(iv). Each of the movants in this case has brought a motion within the appropriate time limit and has included the requisite certification.

#### 2. Largest Financial Interest

The second step under the PSLRA asks which proposed lead plaintiff "has the largest financial interest in the relief sought by the class." Id. § 78u-4(a)(3)(B)(iii)(I). The district court must compare the losses allegedly suffered by the various plaintiffs to determine the financial stakes. Cavanaugh, 306 F.3d at 730. Although the PSLRA does not dictate the process for determining which party has the largest financial interest, several courts have suggested considering: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1157-58 (N.D. Cal. 1999); In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing Lax v. First Merchs. Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug. 11, 1997)); In re Enron Corp., Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. 2002).

The financial interest of each proposed lead plaintiff is as follows:

| Proposed Lead Plaintiff<br>• individual members of group, if applicable | shares purchased | total amount spent | approx. losses |
|---|---|---|---|
| **FMC Pension group** | **235,500** | 1,671,400 | **1,281,628** |
| • Spear Capital | 77,450 | 836,728 | 654,713 |
| • Jamerica | 84,550 | 398,561 | 287,420 |
| • Brogan | 50,000 | 291,255 | 225,530 |
| • FMC Pension | 23,500 | 144,856 | 113,965 |
| **Leason group** | **90,000** | | **204,086** |
| • Glen Leason | 43,000 | | 94,493 |
| • Mary Ann Richason | 20,000 | | 49,051 |
| • Paul Berger | 20,000 | | 25,357 |
| • Gregory Lavdanski | 2,000 | | 20,517 |
| • Olive Branch-Leason | 5,000 | | 14,669 |
| **Dobis** | **41,750** | **189,671** | **107,823** |
| **Searcy Group** | 51,931 | | **107,235** |
| • Manuel Wilkey | 31,00 | 105,220 | 63,779 |
| • Paul/Amella Strick | 12,000 | 56,640 | 24,756 |
| • Richard Shay | 6,931 | 21,860 | 12,594 |
| • Eva Searcy | 2,000 | 8,776 | 6,105 |
| **Berni** | **20,500** | | **38,575** |
| **Bildstein** | **200** | **2,000** | **1,700** |

None of the numbers provided to this court have been challenged. Therefore, FMC Pension Group has the largest financial interest in this litigation, dwarfing all other claims with their claim of $1.2 million.

***Aggregation***

Proposed lead plaintiff Dobis objects to FMC Pension Group on the ground that the group consists of four unrelated entities or individuals whose claims should not be aggregated for purposes of appointing lead plaintiff. The PSLRA does not explicitly state whether individuals may aggregate their losses for consideration as lead plaintiff. Likewise, the Ninth Circuit has not ruled on the issue of aggregation. Cavanaugh, 306 F.3d at 732 n.8. However, many district courts have stated that by using the language "member or members of the purported plaintiff class" the statute envisions aggregation. Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1067 (C.D. Cal. 1999); In re

Network Ass'n Sec. Litig., 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999); In re Universal Access, Inc., 209 F.R.D. 379, 384 (E.D. Tex. 2002).

Most district courts will not aggregate "huge amalgamations of unrelated persons as lead plaintiff." In re Advanced Tissue Scis. Sec. Litig., 184 F.R.D. 346, 352 (S.D. Cal. 1998) (refusing to aggregate 250 or 165 members); Aronson, 79 F. Supp. 2d at 1146 (refusing to aggregate 4,000 plaintiffs); Network Ass'n, 76 F. Supp. 2d at 1024 (refusing to aggregate 1,725 plaintiffs); Yousefi, 70 F. Supp. 2d at 1068 (refusing to aggregate group of over one hundred); Takeda v. Turbodyne, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) (refusing to appoint several hundred investors lead plaintiff). To appoint a massive group would render the litigation too unwieldy and defeat the objective of the PSLRA to put control in the plaintiffs' hands rather than in the hands of lawyers. Id.

However, the majority of courts to have considered the issue allow aggregation in small groups. Yousefi, 70 F. Supp. 2d at 1071 (two); Takeda, 67 F. Supp. 2d at 1129 (seven); Advanced Tissue, 184 F.R.D. at 352 (six); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 45-48 (S.D.N.Y. 1998) (three); Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 409 (D.Minn. 1998) (six); In re Versata, Inc., Litig., 2001 U.S. Dist. LEXIS 24270, at *17 (N.D. Cal. Aug. 17, 2001) (finding small groups of unrelated individuals or entities may aggregate); In re Baan Co. Sec. Litig., 186 F.R.D. 214, 216-17 (D.D.C. 1999) (citing the SEC's amicus brief stating small groups of three to five may serve as lead plaintiff). A few courts have concluded that the proposed group must have some pre-litigation relationship outside their common choice of counsel. Aronson, 79 F. Supp. 2d at 1153 (allowing only a small number of members "that share such an identity of characteristic, distinct from those of almost all other class members, that they can almost be seen as being the same person"); In re Critical Path, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) (finding a group may aggregate only if they have a pre-existing relationship).

Although the statute allows a member or members of the plaintiff class to qualify as lead plaintiff, absent direction from the United States Supreme Court or the Ninth Circuit, this court will not decide the propriety of aggregation. It may well be that aggregation is permissible in limited circumstances as suggested by the court in Aronson, but the issue does not require resolution in this case. The shareholder suffering the largest loss within any of the groups is Spear Capital, a member

of FMC Pension Group. Spear Capital's loss of $654,713 is well above the next largest loss of $287,420 claimed by Jamerica, also a member of FMC Pension Group. Spear Capital alone qualifies as the presumptive lead plaintiff. It makes no practical difference if Spear Capital chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff. Therefore, the court will treat FMC Pension Group as the presumptive lead plaintiff with the largest

Because FMC Pension Group is the presumptive lead plaintiff, only that group's adequacy under Rule 23 is discussed below. See Cavanaugh, 306 F.3d at 730-32 (requiring a sequential process by which only the plaintiff with the largest financial interest is examined for typicality and adequacy under Rule 23).

3. **Rule 23 Requirements**

Although Rule 23 contains four basic requirements (numerosity, commonality, typicality, and adequacy of representation), a presumptive lead plaintiff need only make a "preliminary showing" of typicality and adequacy. Aronson, 79 F. Supp. 2d at 1158. At this stage, the district court is to rely on the presumptive lead plaintiff's complaint and sworn certification. Cavanaugh, 306 F.3d at 731.

Adequacy of representation under Rule 23 contains two factors: "1) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation; and 2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig., 122 F.R.D. 251, 257 (C.D. Cal. 1998); Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). While the district court has wide latitude concerning the type of information to consider in determining adequacy, the court may not consider whether the plaintiff has chosen the best possible lawyer or the best possible fee arrangement. Cavanaugh, 306 F.3d at 732. The choice of attorney may disqualify a plaintiff only if it is "so irrational, or so tainted by self-dealing or conflict of interest, as to cast

---

[4] If, for example, Glen Leason of the Leason Group suffered losses greater than those of Spear Capital, the aggregation issue would be squarely before the court and would have to be decided.

genuine and serious doubt on that plaintiff willingness or ability to perform the functions of lead plaintiff. Id. at 733.

In this case, there is no reason to believe that any of the law firms vying for lead counsel are not qualified or otherwise generally able to conduct this case. Furthermore, there are allegations and no reason to believe that FMC Pension Group has an antagonistic relationship to the remaining class members or that the group' claim is collusive.

*Typicality*

Typicality requires that the plaintiff claim is aligned with the claims of the remainder of the class. United Energy, 122 F.R.D. at 256. This factor mandates that the presumptive lead plaintiff claim "arise from the same event or course of conduct giving rise to the claims of other class members" and be based on the same legal theory. Id. (citing In re Unioil Sec. Litig., 07 F.R.D .5, 620 (C.D. Cal. 1985)) ("The theory behind this prerequisite is that plaintiff with typical claims will pursue her own self-interest and advance the interests of class members accordingly."). In general, the test considers whether other members of the class "have the same or similar injury, whether the action is based conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. Schwartz v. Harp, 08 F.R.D 279 282 (C.D. Cal. 995). Therefore, "differences in the amount of damages, the size or of [stock] purchaser, the nature of the purchaser, and even the specific document influencing the purchase will not render claim atypical in most securities cases. Weinberger v. Thornton, 4 F.R.D 599, 603 (S.D. Cal. 1986). The typicality requirement does not mandate that all claims be identical. Id.

The factual allegations made by FMC Pension Group typical of the class. Every proposed plaintiff alleges essentially the same misrepresentations in Surebeam financial statements. In fact, the allegations and complaints practically identical. While differences exist in the times the different individuals purchased their shares of Surebeam, this difference does not defeat typicality. Schwartz, 08 F.R.D. at 282; Haley v. Medtronic, Inc., 169 F.R.D. 643 649 (C.D Cal. 996) (holding "plaintiff claim can still be typical if the class members injuries suffered at different times"); Takeda, 67 F. Supp. 2d at 37 (finding slightly different class periods do not preclude finding of typicality because varying class periods may be harmonized).

The only attack the typicality of FMC Pension Group is on the ground that the group' interests not typical of plaintiffs whose claims arise under the Securities Act because the group only asserts claims under the Exchange Act. However, number of occasions, courts have found class representative typical even if the class representative is representing claims of both Securities Act and Exchange Act claimants. Thornton, F.R.D. at 603. See, e.g., Cameron v. E.M. Adams Co., 54 F.2d 473 (9th Cir. 976) (class included both public offering and aftermarket buyers); In re Activision Sec. Litig., 621 F. Supp. 415, 433 (N.D. Cal. 985) ("It is no barrier that a] plaintiff may have purchased...stock pursuant to the initial offering yet he seeks to represent purchasers in the aftermarket."); Weinberger v. Jackson, 02 F.R.D. 839, 842 (N.D. Cal. 1984); In re Victor Technologies Sec. Litig., 02 F.R.D. 53 (N.D. Cal. 984) (certified class includes public offering purchasers and aftermarket purchasers). Therefore, FMC Pension Group has made preliminary showing of both adequacy and typicality under Rule 23

#### 4. Rebutting the Presumption

The final step under the PSLRA allows competing plaintiffs to attempt to rebut the presumptive lead plaintiff qualifications under Rule 23. Cavanaugh, 306 .3d at 729. The presumption concerning lead plaintiff only be rebutted in ways: by showing that the presumptively most adequate plaintiff will not fairly or adequately protect the interests of the class, or 2) by showing that the presumptively most adequate plaintiff is subject to unique defenses that render the plaintiff incapable of adequately representing the interests of the class. 15 U.S.C. 78u-4(a)(3)(B)(iii)(II); Advanced Tissue, 184 F.R.D. at 250-5 At this step of the inquiry, the process is adversarial and the other plaintiffs may present evidence disputing the lead plaintiff's prima facie showing of typicality and adequacy. Cavanaugh, 306 .3d at 729.

Leason Group objects to FMC Pension Group the grounds that of the group's members, Jamerica Financial Inc. ("Jamerica"), is "incurably tainted" by securities industry misconduct. Leason Group maintains that the President and principal representative of Jamerica, Mr. Sherwin Brown, is subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and of unsuitable investments. In fact, Mr Brown has had his National Association of Securities Dealers ("NASD") membership terminated. It is unclear at this time whether

these accusations involve Surebeam securities or bear any relation to the present action

On more than one occasion courts have found that an individual is an inadequate ead laintiff lue to unrelated misconduct which imp icates the individual ability to serv as duc ary See Newman v. Eagle Bldg. Techs., 09 F.R.D 99 04-0 (S.D Fla. 002) (ho ding two public tations for lations SEC and NASD rules render proposed lead plaintiff inadequate due to concerns about potential defenses and his moral character) Network Ass'n, F. upp 2d at 02 (holding presumptive lead laintiff inadequate lue to unrelated fraud vestigation). Without comment consideration f Mr Brown guilt or innocence as to the underlying charges, this finds that there is at east potential that america will be subject to unique defenses and not fairl and adequately protect the interests the Therefo the court finds tha ameri incapabl servin lead laintiff.

FMC Pension Group requests that america found inadequate the court sever Iameri from the group and cons der the group independen of america. Th competin ead plaintiffs bject severance of america from FMC ension Group the grounds that individual members group should be allowed to segment and that all members FMC Pension Group tainted by inclusion in the group with america.

Competing plaintiffs argumen that group rises and fal as group and shoul be allowed to segment not supported by the law In fact, courts in this circuit routinely break apart proposed group search of the most adequate plaintiff. See, e.g., Yousefi, 70 F. Supp 2d at 070; Takeda, 67 F. upp Advanced Tissue, 84 R.D at 146. Competin plain iffs In re Critical Path, upp 2d 02 (N.D Cal. 00 .), for the proposition that group cannot be segmented during the determination lead plaintiff. Id. However, the court In re Critical Path found segmentation impermissible In fact, the In re Critical Path court ually appointed an entity lead laintiff that was severed from larger group Id. The court merely found that each indi dual entity segmented, must independently establish adequacy and typicality Id.

Compe lai ffs lso argue that th enti FMC ension Gro inadequat by rtue of the fact that they moved together with america and that FMC Pension Group apparently did

discover, through due diligence, Jamerica negative circumstance. FMC Pension Group responds that Jamerica' misconduct should not reflect on the remaining group members. FMC Pension group cites Newman v. Eagle Building Technologies, 209 .R.D. 499 from the Southern District of Florida for the proposition that even after member of group is eliminated due to serious misconduct, the remaining group members remain untainted. Id. at 505. In Newman, one member of the presumptive lead plaintiff group had been publicly cited as violating Securities and Exchange Commission and NASD rules on two occasions. Id. at 504 The court held the infringing individual inadequate for lead plaintiff status but found the remaining members of the group adequate. Id. at 505 "The only entity that is inadequate for the position of lead plaintiff due to Mr. Kashner' violations of securities laws is Mr. Kashner himself. Such finding does not kill the ability of the remaining Davidson Group to serve lead plaintiff. Id.

This court chooses to follow the reasoning of the Southern District of Florida in Newman. There is evidence before the court that the remaining members of FMC Pension Group involved in securities misconduct of any kind. Any alleged misconduct by Mr. Brown only reflects the adequacy of Jamerica and not the other members of FMC Pension Group. Therefore, the court finds that despite Jamerica inadequacy to serve as lead plaintiff, the remaining members of FMC Pension Group meet the adequacy requirement.

Following the elimination of Jamerica, FMC Pension Group remains the presumptive lead plaintiff. Without deciding the issue of aggregation, FMC Pension Group is still the plaintiff with the largest financial interest. FMC Pension still includes the single investor with the largest sustained loss, Spear Capital. Furthermore, group FMC Pension has still faced the largest loss. The modified group' losses include: (1) Spear Capital' loss of $654,7; (2) Joseph Brogan loss of $225,530, and (3) FMC Pension's loss of $ 3,965. Thus, without Jamerica FMC Pension Group's aggregate losses amount to $994,208. The second largest proposed plaintiff, Leason Group, has only suffered losses of approximately $204,086. Finally, FMC Pension Group typicality is not defeated by elimination of Jamerica. Therefore, even after Jamerica is removed from the group, FMC Pension Group remains the presumptive lead plaintiff.

The only other argument that FMC Pension Group will not fairly and adequately represent the

class comes from Bildstein in his motion to be appointed as a separate lead plaintiff on the claims arising under the Securities Act.

**B. "Niche" Lead Plaintiffs**

Bildstein moves for this court to appoint co-lead plaintiffs, sometimes referred to as "niche" plaintiffs, that is one lead plaintiff for the claims under §§ 10(b) and 20(a) of the Exchange Act ("the section 10 claims") and one lead plaintiff for the claims under §§ 11 and 15 of the Securities Act ("the section 11 claims"). Bildstein argues he is the most appropriate plaintiff for the section 11 claims. Former proposed lead plaintiff Anthony Segalle joins in Bildstein's motion. FMC Pension Group objects to the appointment of multiple lead plaintiffs.[5]

Bildstein argues that a separate lead plaintiff is needed to represent the interests of the section 11 plaintiffs because section 11 has different legal requirements. Section 11 claims may proceed on a strict liability theory whereas section 10 claims require scienter be proven. Bildstein asserts this difference in scienter creates an "inherent conflict" between the two classes of investors and consequently FMC Pension Group will not pursue the section 11 claims vigorously.

In support of his argument, Bildstein cites a few cases in which district courts have appointed "niche" lead plaintiffs. See In re Cendant Corp. Litig., 182 F.R.D. 144, 149-50 (D.N.J. 1998) (appointing co-lead plaintiffs because the presumptive lead plaintiff had a conflict of interest due to investments in defendant's institution); In re Nanophase Tech. Corp. Litig., 1999 U.S. Dist. LEXIS 16171, at *16 (N.D. Ill. Sept. 27, 1999) (appointing co-lead plaintiffs on section 10 and section 11 claims because the legal standards and facts were "exceedingly different"); In re Peregrine Sys., Inc. Sec. Litig., Civil No. 02cv870-J (RBB) (S.D. Cal. Oct. 11, 2002) (appointing co-lead plaintiffs on the section 11 and section 10 claims). Although Bildstein argues that because the Securities Act and the Exchange Act are two different statutes the court is required to appoint two different lead plaintiffs,

---

[5]Defendants have also filed objection to Bildstein's motion to appoint a separate lead plaintiff on the section 11 claims. However, Defendants lack standing to object to the adequacy or typicality of the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ("The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class..."); Takeda, 67 F. Supp. 2d at 1138; Gluck v. CellStar Corp., 976 F. Supp. 542, 550 (N.D. Tex. 1997).

he provides authority support thi proposi

In fact th maj ty of courts hav refused to appoint ead pl tiffs, argu that such practic defeats the SLRA goal 'minimizin wyer-dri gati See, e.g., Advanced Tissue, 84 .R.D. at 52 (refusing to appoint co-lead ffs ecause grou had already satisfied the PSLRA equiremen ); Aronson, 79 Supp 2d Enron Corp., 06 D 454- fusin to subdivide multiple "niche" ead plaintiffs ased thi type security purchased because "undermin the purpose th LRA"); Greenberg v. Bear Stearns & Co., upp 2d '0-' (E.D.N.Y 2000) (refusin to appoin subclasses with separate lead aintiffs because it 'run counter to the stated purpo of th PSLRA which to osts and to give contro the litiga to ead laintiffs"); Gluck v. CellStar Corp., 97 upp 542 54 (N.D 'ex. 7) ("Increasing the number Lead laintiffs ld detract from the Reform A fundamental goal client control, would itab delegate ore trol and responsibi ity to th lawyers for the and make the lass representatives reli th lawyers."); Weinberg v. Atlas Air Worldwide Holdings, Inc., R D 248 54 D.N.Y 00 ("In sum, th need to appoint multip Lead aintiffs order to represen different action when subcl ses or separate representati may appointed, if necessary, as the gati proceeds ").

On distri court in the Northern District California specifically rejected the gument made by Bildst th case. See Aronson, Supp The Aronson plainti requested different ead plaintiffs the claims under the Securi Act and th Exchange A the grounds that the act "in ol ed different shown scienter and proof. Id. The Aronson court specifically he that differences do not amoun to an inherent conflict necessitating multiple ead plaintiffs. Id. See also In re Diasonics Sec. Litig., upp 44' 454 (N.D Cal 84) ("The Ninth Circ has exp citly rejected the suggesti that there incipient onflict between early purchasers and later purchasers stock offering.") (citing Blackie v. Barrack, 2d 91 908 (9th Cir 975)). ecause 'all claims based the financial disclosures, the existence of different ding standards does create the eed for separate lead plaintiff. Aronson, 79 upp 2d at Whi conflict of interest adequat reason to appoint niche ead plaintiffs, th court may ot rely sp lati about poss hl future conflicts. Id. Th tatut

presumes that "one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories." Id.

In this case, Bildstein has failed to prove a conflict between the section 10 and section 11 plaintiffs. The claims of the section 10 and section 11 plaintiffs are based on the same facts and the different scienter standards do not defeat the presumption that one lead plaintiff can vigorously pursue

standing to assert section 11 claims and any argument that the group will not vigorously represent the interests of the section 11 plaintiffs is completely speculative at this point.

**C. Lead Counsel**

Finally, all parties move for the approval of their choice of counsel. The PSLRA dictates that the lead plaintiff is to select the lead counsel subject to the court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The court may refuse to approve a lead plaintiff's choice of counsel if it is necessary "to protect the interests of the class." Id. § 78u-4(a)(3)(B)(iii)(II)(aa). In this case, FMC Pension Group has selected Milberg Weiss Bershad Hynes & Lerach, LLP ("Milberg Weiss") as well as Schatz & Noble, P.C. as their counsel. These firms are experienced in securities litigation and the court finds

## III. Conclusion

In sum, FMC Pension Groups's motion for appointment as lead plaintiff [Doc. No. 24-1] is **granted** conditioned on the removal of Jamerica from the FMC Pension Group. FMC Pension Group's motion for approval of Milberg Weiss and Schatz & Noble as lead counsel [Doc. No. 24-2] is **granted**.

Leason Group [Doc. Nos. 18-1, 18-2], Dobis [Doc. Nos. 35-1, 35-2], Searcy Group [Doc. Nos. 7-1, 7-2], Berni [Doc. Nos. 10-1, 10-2], and Bildstein's [Doc. Nos. 30-1, 30-2] motions for appointment as lead plaintiff and for approval of lead counsel are **denied** without prejudice. Bildstein's motion for consolidation is **denied** as moot [Doc. No. 30-3] because the court has already entered an order consolidating the actions pending and any subsequently filed related actions [Doc. No. 5].

**IT IS SO ORDERED.**

DATED: 12/31, 2003

JEFFREY T. MILLER
United States District Judge

cc: all parties