UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRED DEN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOSTON COMMUNICATIONS GROUP, INC., KAREN A WALKER and EDWARD H. SNOWDEN,<br><br>Defendants. | Civil Action No.: 03-cv-12211 DPW |
| RONALD C. WON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOSTON COMMUNICATIONS GROUP, INC., KAREN A WALKER and EDWARD H. SNOWDEN,<br><br>Defendants. | Civil Action No.: 03-cv-12244 DPW |
| MICHAEL F. STALKA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOSTON COMMUNICATIONS GROUP, INC., KAREN A WALKER and EDWARD H. SNOWDEN,<br><br>Defendants. | Civil Action No.: 03-cv-12486 WGY |

**MICHAEL F. STALKA'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD
<u>PLAINTIFF AND IN OPPOSITON TO COMPETING MOVANTS' APPLICATIONS</u>**

## INTRODUCTION AND PROCEDURAL HISTORY

On January 12, 2004, Michael F. Stalka ("Stalka" or the Movant) moved for appointment as lead plaintiff pursuant to section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B). As detailed in Stalka's application, he purchased the common stock of Boston Communications Group, Inc.. ("BCGI" or the "Company") between June 12, 2003 and July 16, 2003 (the "Class Period"), and suffered damages of approximately $18,640 as a result of defendants' violations of the federal securities laws. Plaintiff Stalka has submitted a sworn declaration providing evidence to the Court. On that same day, an additional motion to be appointed lead plaintiff was made by the group of Adam Feldman ("Feldman"), Beth Stockinger ("Stockinger") and Fred Den ("Den"), self-styled the Feldman Group. The Feldman Group claims a collective loss of approximately $73,160. In sharp contrast to plaintiff Stalka's submission, the Court lacks evidence for appointing the Feldman Group as its attorneys have submitted *unsigned* "certificates" of two of its three members.

Despite the Feldman Group's claimed loss, it has not submitted any evidence to support its claims that it is the presumptively most adequate plaintiff nor made a *prima facie* showing that it is adequate to act as a lead plaintiff. Furthermore, it has failed to provide the minimum information to the Court required by the PSLRA to be a "representative party." Because two of the three members of the Feldman Group suffer a fatal defect because of their failure to support their own applications or comply with the statutory requirements of the PSLRA, the Feldman Group fails in its entirety. Its only member to provide any sworn submission, Den, suffered a loss of $17,510.63, as compared to movant Stalka's loss of $18,640. Stalka is the presumptively most adequate lead plaintiff.

Moreover, in so far as the Court is willing to consider the appointment of a group of unrelated individuals to be lead plaintiff, the Feldman Group has failed to make a *prima facie* showing to the Court that it is adequate to serve as lead plaintiff and has disregarded the requirement placed upon groups of individuals moving for lead plaintiff to demonstrate their capability to act as a coherent and effective body as a lead plaintiff. In conclusion, not only is Stalka the presumptively most adequate lead plaintiff but he is the only movant that has demonstrated his adequacy to serve as lead plaintiff.

## ARGUMENT

### I.  MICHAEL F. STALKA IS THE PRESUMPTIVELY MOST ADEQUATE LEAD PLAINTIFF

#### 1.  Feldman Group Members Feldman and Stockinger Failed to Comply With the PSLRA's Certification Requirements to be a Lead Plaintiff

The provisions guiding the selection of a lead plaintiff are set forth in Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B). Any member of the purported class party may move for lead plaintiff not later than 60 days after the date on which the notice is published. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Critical to any consideration of an application to the Court is that the Court be provided evidence by affidavit or sworn statement demonstrating the factual contentions contained therein. What is more, the PSLRA provides that as a precondition to the appointment of a representative party, "each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which **shall be personally signed by such plaintiff** . . . " setting forth, among other things, the transactions the plaintiff made during the class period, and that the plaintiff has reviewed the complaint and is willing to serve as a representative party on behalf of the class. 15 U.S.C. § 78u-4(a)(2)(A).

In winking at the certification provision of the PSLRA but not complying, two of the members of the Feldman Group submitted unsigned plaintiff certifications. Neither member Stockinger or Feldman's "certificate" is executed. Both fail to meet the statutory requirements because they are not personally signed by plaintiffs. Neither Feldman nor Stockinger submitted a signed certificate to counsel. Because Feldman and Stockinger have failed to comply with the certification requirements set forth in the PSLRA, they are barred from being appointed lead plaintiff.

In <u>In re Eaton Vance Corp. Sec. Lit.</u>, 2003 WL 22998810 (D. Mass. Dec. 16, 2003), the Court held that a plaintiff is precluded from being certified as a class representative if they failed to file a signed certification. <u>Id.</u> at *3-4.

> 2. **Of the Movants Who Have Complied With the PSLRA, Michael F. Stalka Has the Largest Financial Interest and Is Therefore the Presumptively Most Adequate Lead Plaintiff**

In determining lead plaintiff, the Court must adopt a presumption that the most adequate plaintiff is the person or persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In determining the largest financial interest, courts have weighed four factors first enunciated in <u>Lax v. First Merchants Acceptance Corp.</u>, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 11, 1997), and subsequently renamed the Olsten factors in <u>In re Olsten Corp. Sec. Litig.</u>, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998):

> (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period [retained shares]; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.

Accord Netsky v. Capstead Mortgage Corp., 2000 U.S. Dist. LEXIS 9941, at *17 (N.D. Tex. July 12, 2000); In re McKesson HBOC, Inc. Sec. Litig., 97 F. Supp. 2d 993, 995 (N.D. Cal. 1999); In re: Party City Sec. Litig., 189 F.R.D. 91, 105 (D.N.J. 1999).

Even if on could consider the losses of the only member of the Feldman Group who signed his certification, the sole remaining member, Den, purchased 2,000 shares of BCGI common stock during the class period and suffered losses of approximately $17,510.63.[1] Movant Stalka purchased 4,000 shares of BCGI common stock during the class period and suffered a loss of $18,640 and therefore has the largest financial interest in the litigation and is the presumptively most adequate lead plaintiff.

II.   **THE FELDMAN GROUP HAS FAILED TO MAKE A *PRIMA FACIE* SHOWING OF ADEQUACY AND IS INADEQUATE AS A LAWYER-DRIVEN CONSTRUCT**

Even if the Court is willing to consider the losses of Stockinger and Feldman, the Feldman Group has not only failed to demonstrate that it qualifies as an adequate representative under Rule 23 but has demonstrated by its inaction that it is either unwilling or incapable of providing fair and adequate representation to the class. Consequently, the Feldman Group is not entitled to any presumption that it is the most adequate lead plaintiff.

The overarching intent of the lead plaintiff provision in the PSLRA was to "encourage the most capable representatives . . . to participate in class action litigation and to exercise supervision and control of the lawyers for the class" and to "protect[] investors . . . against lawyer-driven lawsuits." H. Rept. No. 104-369 (1995). Although this Court has appointed

---

[1] Since Mr. Den moved as part of a group and there is no evidence that he would be willing or able to serve alone as a lead plaintiff, Mr. Den cannot be considered as applying to be a sole lead plaintiff.

5

groups comprised of unrelated individuals as lead plaintiffs, the Court's analysis of such groups as the presumptively most adequate lead plaintiff should not terminate with the calculation of a groups collective losses. Rather, the Court's analysis can examine additional factors in determining which movant is most adequate to represent the interest of the class and vigorously pursue the litigation. See In re Cavanaugh, 306 F. 3d 726, 732 (9th Cir. 2002) (holding "district court has latitude as to what information it will consider in determining typicality and adequacy"); In re Network Associates Inc. Sec. Lit., 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999) (in determining the adequacy of a group to be lead plaintiff the group must "explain and justify its composition and structure to the court's satisfaction" (quoting Amicus Brief of the Securities Exchange Commission filed in Parnes, et al., v. Digital Lightwave, Inc., No. 99-11293 (11th Cir. Aug. 25, 1999)). Important to this analysis is whether a group has demonstrated that it is capable of providing fair and adequate representation to the class. Implicit in such a determination is the consideration that the foundations for the lead plaintiff provisions of the PSLRA are rooted in Congress' desire to provide greater control over securities litigation to the shareholders to minimize lawyer-driven litigation. H. Rept. No. 104-369 (1995). Consequently, the Court should direct its analysis at determining the movant most likely to fulfill the intentions of the PSLRA and look to limit its consideration of lead plaintiffs where the group appears to be merely a "lawyer-driven" artifice.

    The Feldman Group has not offered the Court any information which indicates that the group is capable of acting as a cohesive unit or explaining how the group intends to fulfill its responsibilities as a lead plaintiff. Where a group fails to sufficiently demonstrate its willingness to act as a group or its ability to act cohesively, courts have rejected the groups appointment for lead plaintiff. In In re Atmel Corporation Securities Litigation, Mater File No. C-03-0558 MMC

(N.D. Ca. June 17, 2003) (Order Granting Plaintiff Keith's Motion For Appointment As Lead Plaintiff; Denying Motions of Carpenters' Pension Fund Group And Shaw Group For Appointment as Lead Plaintiff) (attached hereto as Exhibit A), the court rejected appointing a group of lawyer-aggregated individuals as lead plaintiff because the group failed to provide adequate information other than independent certifications of each member containing information pertaining to financial losses and selection of lead counsel.

The Feldman Group has likewise failed to submit any additional information that would assist the Court in determining if the group is a cohesive group able to fulfill its obligations as a lead plaintiff. Consequently, the Feldman's Group lack of information demonstrates that it has not satisfied the requirements of Rule 23, and therefore should not be appointed as lead plaintiff. See In re MicroStrategy Inc. Secs. Litig., 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (rejecting group as a lead plaintiff for failing to demonstrate it was cohesive or able to function as a unified entity).

In addition to the Feldman Group's silence with regard to its ability to act as a group, the Feldman Group through its members' inaction has demonstrated that both individually and as a group, it is unable to adequately represent the class and fulfill its obligations to vigorously prosecute this action. In an acknowledgement to the plaintiffs certification requirement of the PSLRA, the three members comprising the Feldman Group submitted a purported plaintiffs certification to the Court. See Exhibit B. However, Feldman Group members Feldman and Stockinger failed to execute those certificates in legally binding form. Assuming these plaintiffs are not just ciphers. Nevertheless, the inability of counsel to insure that its clients meet statutory requirements creates a strong inference that neither the Feldman Group is adequate to represent the class nor are Feldman nor Stockinger as individuals. This failure of the Feldman Group to

demonstrate interest in fulfilling even the most nominal of obligations to the Court suggests that the Group is incapable of adequately and fairly representing the class. The inaction by the Feldman Group's members further suggests that it is merely a lawyer-driven and controlled entity with little to no on-going involvement by the proposed lead plaintiffs.

### C.    MICHAEL F. STALKA OTHERWISE SATISFIES RULE 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court shall limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 at *20 (N.D. Ill. Aug. 11, 1997); Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875 at *7-8 (M.D. Fla. Feb. 6, 1997).

As set forth in his memorandum of law in support of his Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel filed with the Court on January 12, 2004, Stalka satisfies the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.

As the movant with the largest financial interest in the relief sought by the class and having satisfied Rule 23, Stalka clearly satisfies all prongs of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

## CONCLUSION

For the foregoing reasons, Michael F. Stalka respectfully requests that the Court: (i) consolidate the actions referenced in the instant captions; (ii) appoint Michael F. Stalka as Lead Plaintiff in the Actions; and (iii) approve Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel for the Class.

Dated: January 26, 2004

        Respectfully submitted,

        **SHAPIRO HABER & URMY LLP**

        By: /s/ Theodore M. Hess-Mahan
        Theodore M. Hess-Mahan, Esq.
        75 State Street
        Boston, MA  02109
        Telephone: (617) 439-3939
        Facsimile: (617) 439-0134

        **WOLF HALDENSTEIN ADLER**
         **FREEMAN & HERZ, LLP**
        Fred T. Isquith, Esq.
        Christopher S. Hinton, Esq.
        270 Madison Avenue
        New York, New York 10016
        Telephone: (212) 545-4600
        Facsimile: (212) 545-4653

        **LAW OFFICES OF BRUCE G. MURPHY**
        Bruce G. Murphy, Esq.
        265 Llwyds Lane
        Vero Beach, FL 32963
        Telephone: (772) 231-4020

347722